**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Fabiola Roehrich y Gorostieta,** | **)** | |
| **Plaintiff,** | **)** | |
| | **)** | **No. 3:19 C 50001** |
| **v.** | **)** | |
| | **)** | **Judge Ronald A. Guzmán** |
| **Walmart, Inc.,** | **)** | |
| **Defendant.** | **)** | |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, Defendant's motion to enforce the settlement agreement [64] is granted. A status hearing is set for July 16, 2020 at 10:15 a.m. If a stipulation to dismiss is filed before that date, the status hearing will be stricken and the parties need not appear.

## STATEMENT

Plaintiff sued Walmart, alleging disability discrimination and retaliation under the Family and Medical Leave Act. According to Defendant, the parties settled, and Defendant moves to enforce a settlement agreement between the parties. Because Plaintiff does not dispute the facts as recited by Defendant in its opening brief, the Court sets forth those facts below.

Settlement discussions between Plaintiff and Walmart began on November 1, 2019, as the parties prepared for a settlement conference with the magistrate judge. According to the magistrate judge's required procedures, Plaintiff provided a formal written settlement demand to Walmart, and Walmart provided its response on November 8, 2019. (Def.'s Ex. 1, Kalas Decl. ¶¶ 4-5.)[1] In its response, Walmart stated that "[a]s part of any settlement, [Plaintiff] would be required to execute a settlement agreement providing a full release and waiver to Walmart of all claims related to her employment and termination thereof, dismissing her pending claims with prejudice, confidentiality, no-disparagement, no admission of liability or wrongdoing, an agreement to no future employment and other provisions usual to settlement of an employment claim." (*Id.* ¶ 6.) In the parties' subsequent negotiations, they negotiated the dollar amount for settlement but did not discuss these non-monetary terms. (*Id.* ¶ 7.)

On November 13, 2019, Plaintiff appeared with her counsel, and Walmart appeared by counsel and an authorized representative for a settlement conference with the magistrate judge. During the conference, the parties exchanged monetary settlement offers and demands, but did not reach agreement on a dollar figure. (*Id.* ¶ 8.) The parties resumed settlement discussions in early February 2020, as the close of discovery was nearing. Plaintiff's counsel emailed

---

[1] Ms. Kalas' email was submitted directly to chambers because it contained statements regarding settlement discussions.

Defendant's counsel on February 11, 2020 indicating that Plaintiff had reduced her monetary demand. (*Id*. ¶ 9 and Ex. A.) The parties engaged in negotiations, exchanging monetary settlement offers verbally and via e-mail over the following weeks. (*Id*. ¶¶ 9-15.)

On February 23, 2020, two days after Plaintiff's deposition, Plaintiff's counsel emailed Walmart's counsel, advising that plaintiff was "prepared to come down . . . if you are willing to move up . . . ." (*Id*. ¶¶ 10-11 and Ex. B.) Counsel spoke by phone on February 24, 2020, at which time Plaintiff's counsel clarified the amount of the offer. Through further verbal discussions, the parties conveyed monetary offers, narrowing the gap between their positions until they were $10,000.00 apart. (*Id*. ¶ 12.) On February 25, 2020, Plaintiff's counsel emailed Walmart's counsel asking if there was any change in Walmart's position. Walmart's counsel advised that there had not been, and in response to counsel's inquiry whether there had been any change in Plaintiff's position, Plaintiff's counsel responded, confirming Plaintiff's most recent offer. (*Id*. ¶ 13 and Ex. C.) On February 26, 2020, Walmart's counsel advised Plaintiff's counsel it would meet Plaintiff in the middle of the parties' gap and increased its offer by $5,000.00. (*Id*. ¶ 14.) On March 4, 2020, counsel spoke in person when appearing for the Court's status conference and Plaintiff's counsel indicated that Plaintiff was unwilling to decrease her monetary offer to meet Walmart in the middle, and was considering increasing her offer if Walmart did not accept Plaintiff's offer that was on the table. The offer on the table was not revoked and had no expiration date. The parties had no further communications regarding settlement until March 11, when Walmart's counsel emailed Plaintiff's counsel to inform Plaintiff that Walmart had accepted Plaintiff's most recent offer. (*Id*. ¶¶ 15-16 and Ex. D.) On April 5, 2020, Plaintiff's counsel emailed Walmart's counsel indicating that Plaintiff's demand now was $10,000.00 higher than the offer accepted by Walmart on March 11, 2020.

"State contract law governs the formation, construction, and enforcement of settlement agreements." *Washington v. Chi. Bd. of Educ.*, 786 Fed. Appx. 602, 605-06 (7th Cir. 2019). "Under Illinois law, . . . a settlement generally is enforceable if there was mutual assent to material terms." *Id*. at 606. Walmart contends that a binding agreement was reached because Plaintiff offered to settle her existing claims against Walmart in exchange for the monetary amount that she offered, and Walmart accepted that offer.

Plaintiff argues that because Walmart did not accept her February 25, 2020 offer and instead made a counteroffer on February 26, 2020, Plaintiff's demand was rejected and could not later be accepted by Walmart. *See Dresser Indus., Inc. v. Pyrrhus AG*, 936 F.2d 921, 927 (7th Cir. 1991) (stating that a "counter-offer rejects the original offer, which expires and may not be 'accepted' later.") (citation and internal quotation marks omitted). Walmart responds that Plaintiff subsequently made a new offer. Specifically, Walmart notes that "on March 4, 2020, counsel for the parties discussed in person whether either party had altered their position after February 26 when Walmart increased its monetary settlement offer by $5,000." (Def.'s Reply, Dkt. # 73, at 1.) During that discussion, Plaintiff's counsel communicated that Plaintiff was unwilling to decrease her monetary offer "and was considering increasing her offer if Walmart did not accept Plaintiff's offer that was on the table." (Def.'s Ex. 1, Kalas Decl., ¶ 15.) As noted, on March 11, 2020, Walmart's counsel emailed Plaintiff's counsel to inform Plaintiff that Walmart had accepted Plaintiff's most recent offer. Plaintiff's counsel responded that Plaintiff's offer had increased by $10,000.00.

"An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 561 (7th Cir. 2012) (quoting Restatement (Second) of Contracts § 24 (1981)). In her response, Plaintiff neither refutes defense counsel's characterization of their March 4, 2020 conversation nor offers any contrary evidence. Plaintiff's counsel's statement that Plaintiff was considering increasing her offer if Walmart did not accept the offer that was on the table is a manifestation of Plaintiff's willingness to settle the case for the amount that had been discussed. Because Walmart accepted that offer, the parties had a meeting of the minds with respect to settling the case at the amount discussed.

For these reasons, the Court grants Defendant's motion to enforce the settlement agreement. The parties are directed to proceed with the case in accordance with this order. A status hearing is set for July 16, 2020 at 10:15 a.m. If a stipulation to dismiss is filed before that date, the status hearing will be stricken and the parties need not appear.

**Date**: June 11, 2020

**Ronald A. Guzmàn**
**United States District Judge**